## NEGUS v. NEGUS ET AL.

1. **Wills**: IMPLIED REVOCATION: SUBSEQUENT BIRTH OF CHILDREN. Where a testator, having two children, bequeathed his entire property to his wife, and subsequently two other children were born to him, *held* that the will was presumptively revoked.

2. ——: ——: REPEAL OF STATUTE. The statutes relating to wills which were in force prior to the adoption of the Code of 1851 provided for a partial revocation of the will, in case of the subsequent birth of children to the testator, instead of total revocation as at common law; the effect of their repeal, therefore, was to restore the common law rule.

### *Appeal from Muscatine Circuit Court.*

THURSDAY, SEPTEMBER 20.

THE petition in substance alleges that on the 8th day of December, 1864, Elwood Negus duly executed his last will and testament, giving and bequeathing to the plaintiff, his wife, all his property both personal and real; that Elwood Negus died July 27th, 1875, leaving surviving him the plaintiff, his widow, and four children, who are also children of the plaintiff, to-wit: Bracken Negus, aged twenty years; Elizabeth Negus, aged fourteen years; Caroline Negus, aged seven years; and Rebecca Negus, aged five years; the two former of whom were born before the will was made, and the two latter after its execution; that the will was duly admitted to probate; that the defendant Wilson has taken out letters of guardianship for all of the said minor children, and claims that the birth of Caroline and Rebecca after the execution of the will operates as a revocation of it; that Wilson asserts that he has a right to be con-

sulted in the renting of the property of which decedent died seized, and that he has the right to take and hold, for the said minors, the proportion of the rents and profits that would come to them if their father had never executed the said will. The plaintiff alleges that she is the sole owner of said property, and prays that the ownership set up on behalf of said minors may be decreed a nullity. The defendants demurred to this petition. The demurrer was sustained. The plaintiff appeals.

*Brannan & Jayne,* for appellant.

*Richman & Carskaddan,* for appellee.

DAY, CH. J.—In *McCullum v. McKenzie*, 26 Iowa, 510, it was held that the birth of a child to a testator subsequent to

1. WILL: implied revocation: subsequent birth of children. the making of the will, and before the death of the testator, alone operates as an implied revocation of the will. In that case the testator had no children when he made his will. In this case the testator had two children when he willed all of his property to his wife. Because of this difference in facts it is claimed that the doctrine of *McCullum v. McKenzie* is not applicable to this case. No case of very controlling authority has been cited, presenting the same facts as those in this. In *Sherry v. Lozier*, 1 Bradford, 437, a seaman, having two children, executed at a shipping office in New York, in 1813, a will giving all his property to his wife. He was then in very moderate circumstances, but subsequently became possessed of a very large estate, and had five other children. It was held that the will of 1813 was revoked by implication or presumption of law, derived from the peculiar circumstances attending its execution—the alteration in the decedent's estate and the subsequent birth of five children. In *Johnstone v. Johnstone*, 1 Phillimon, 447, decided in 1817, by Sir John NICHOLL, it was held that it was not an essential ingredient of an implied revocation that a subsequent marriage should concur with the subsequent birth of issue; and that the birth of a child, when accompanied with other circumstances leaving no doubt of the testator's inten-

tion, was sufficient to revoke the will of a married man. When the testator, in that case, made his will, he was married and had two children living. His will provided for these and a third child in *ventre de sa mere*. He lived twenty-two years afterward, and his property had augmented from 20,000 pounds sterling to 300,000 pounds sterling. He died suddenly, leaving three children, born after the will, wholly unprovided for, and one of the former children swept away the whole as residuary legatee. "In *Gibbons v. Count*, 4 Vesey, 840, the testator made his will after marriage and the birth of two children. He subsequently had two children; his wife died and he married again, but had no issue of that marriage. The point was not determined, but Lord ALVANLEY said: 'Such a case as this has never yet been decided; the birth of children by the first wife after the execution of the will, and after the death of the wife a subsequent marriage, and no children by that, I do not say will have the same effect. I am not the judge to decide that, but there is not a single argument applying to the feelings of mankind, to draw a decision from the court, that will not apply to one case as much as the other. Conviction flashes on every man's mind that there is just as much presumption. Why are these subsequent children less dear to him, because he happened to have other children born before? I think the same argument would do under these circumstances.'" See *Sherry v. Lozier*, 1 Bradford's Reports, 451.

In Young's Appeal, 39 Pa. St., 119, it is said: "The principle of the common law of revocation of wills, by the subsequent birth of issue, is stated thus: 'If the testator's circumstances be so altered that new moral testamentary duties have accrued to him subsequent to the date of the will, such as may be presumed to produce a change of intention, this will amount to an implied revocation. Now, it matters not whether it be said that this principle was derived from the Roman law, or from our human instincts of justice. Certainly it is now a legitimate element of our common law, and we would not have received it but for those instincts. The Romans received it before us, because they were before us, and because they, too, were human.'" Whilst we have found no adjudicated case

precisely in point, we are of opinion that the fact that the testator in this case had two children at the time he made his will, does not take the case out of the principle determined in *McCullum v. McKenzie*. In that case it is said: "Certainly, as to a child born, as this one was, eighteen months after the testamentary act, there could be no intention to disinherit. And, surely, we need not say that the birth of this child instantly created new duties and obligations, worked such a change in the father's domestic relations as to necessarily, properly and most reasonably influence and sway his affections and conduct, and, we may add, legally operate to presumptively change his intention in the disposition of his property, as expressed in his will." The same may be said as to the two post-testamentary children in this case, one of whom was born four, and the other six years after the execution of the will. A presumption of an intention to disinherit them does not arise from the disinheriting of the two older children.

II. The first territorial legislature of Iowa passed an act in relation to wills, approved January 25, 1839, which contains the following provision: "If, after making a last will and testament, a child or children shall be born to any testator or testatrix, and no provision be made in such will for such child or children, the will shall not, on that account, be revoked, but, unless it shall appear by such will that it was the intention of the testator or testatrix to disinherit such child or children, the devises and legacies by such will provided and given shall be abated in equal proportions to raise a portion for such child or children equal to that which such child or children would have been entitled to receive out of the estate of such testator or testatrix, if he or she had died intestate."

*2.——: ——: repeal of statute.*

The Revised Statutes of 1843 contain these further provisions in relation to wills:

"Section 19. When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to if he had

died intestate, unless they shall have been provided for by the testator in his lifetime, or unless it shall appear that such omission was intentional, and not occasioned by any mistake or accident.

Section 20. When any child of a testator, born after his father's death, shall have no provision made for him by his father in his will, or otherwise, he shall take the same share of his father's estate, both real and personal, that he would have been entitled to if his father had died intestate.

Section 21. When any portion is assigned to a posthumous child, or to a child, or the issue of a child, omitted in the will of his parent, as mentioned in the two preceding sections, the same shall be .taken equally from all the devisees and legatees in proportion to the value of what they shall receive respect- ively under the will, unless in consequence of a specific devise, or bequest, or of some after provisions in the will, a different apportionment among the devisees and legatees shall be found . necessary, in order to give effect to the intention of the testa- tor as to that part of his estate which shall pass by his will."

The Code of 1851 repealed all previous laws on the subject of wills, and eliminated all of the law contained in the sections above quoted, except so much as saves to a posthumous child, unprovided for by the will, the share of the estate he would have been entitled to had no will been made. It is claimed that the effect of this repeal is to deprive children born after the execution of the will, and before the death of the testator, of any portion of the estate. It is to be observed, however, that these sections provide for a partial, instead of a total revocation of the will, under the circumstances named. The effect of their repeal is to restore the total revocation of the common law.

The demurrer, we think, was properly sustained.

AFFIRMED.