## E. A. BARBER v. C. VAN HORN.

1. PARTNER — *Agent of the Firm.* Every partner is a general agent of the firm to carry out and transact its business in the usual and ordinary way.

2. POWER OF PARTNER — *Apparent Authority.* It is the general principle relating to commercial or trading partnerships that each partner is the lawful agent of the partnership in all matters within the apparent scope of the business. (*Deitz v. Regnier*, 27 Kas. 94.)

3. PARTNERSHIP MATTERS— *Constructive Knowledge.* The knowledge of one partner concerning partnership matters is constructively the knowledge of all the members of the partnership, although the other members are actually ignorant thereof.

4. RENEWAL NOTE, *Binding upon Firm.* Where a private banking firm obtains money for the purpose of carrying on its usual and ordinary business from another person with the knowledge of all the members of the firm, and executes a firm note therefor, and afterward one of the partners of the firm withdraws from the assets of the firm sufficient moneys to pay the note, and falsely informs the other members of the firm that the note is paid, and such note is shown by the books of the firm to be satisfied and canceled, but is not in fact paid off, and such partner, without the knowledge of the other members of firm, continues to pay interest upon the note, and, when due, renews the same in the name of the firm, the new note, if the payee has no notice to the contrary, is binding upon the firm as a valid obligation thereof.

5. NOTE, *Signed by Individual Name and Firm Name.* The fact that the partner signed his individual name to a renewal of the old note given by the firm before signing that of the firm may be considered by the trial court in determining whether or not the payee had reason to know the new note was executed without the knowledge of the other partners, or in fraud of their rights.

### *Error from Allen District Court.*

ON the 31st of December, 1888, C. Van Horn commenced his action against E. A. Barber, as a member of the late firm of Dayton, Barber & Co., to recover $7,300, and interest. Trial at the March term, 1889, before the court without a jury. The court made the following special findings of fact:

"1. On April 1, 1875, the defendant E. A. Barber and one B. H. Dayton formed a partnership in the business of private banking, at Humboldt, Allen county, Kansas. The business of the firm consisted in loaning money, discounting notes, issuing and selling bills of exchange, receiving money on deposit, and doing generally such business as ordinarily and usually comes within the scope of private banking. As an incident to their business, it was their custom also to borrow money, when the same was needed or required by them in the course of their banking business, for which money, so borrowed, it was their custom to execute and deliver the notes of the firm. From the time of the organization of the part-

nership up to some time in the fall of 1883, Dayton was the
active manager of the banking business, and attended to the
most of the correspondence of the bank.   Barber was a prac-
ticing lawyer during said period, and practiced his profession
as such, and in that connection attended to the collections of
the firm.

"2.  The health of Dayton failed him, and, on September 1,
1884, the firm dissolved by mutual consent, Dayton with-
drawing from the firm, while Barber continued in the busi-
ness.   Dayton died on the 6th day of October, 1885.   The
plaintiff, Van Horn, resided at Springfield, Mass., when the
aforesaid partnership of Dayton, Barber & Co. was formed,
and had for many years prior thereto, and has ever since.
Dayton was his son-in-law, having married his only daughter.

"3.  The facts in relation to the note for $1,100, declared
on in the petition as plaintiff's first cause of action, are as
follows:  Van Horn, it appears, was a man of considerable
means, and was dealing to some extent in Kansas securities,
which he would buy, dispose of or collect through his son-
in-law, Dayton.   In February, 1878, he owned three notes
made by persons in Kansas, to wit:  A note of John Kile for
$500, a note of R. H. Cunningham for $300, and a note of
John Campbell for $300, and these notes he had placed in
the hands of Dayton for collection.   These parties paid their
notes to Dayton in February and March, 1878, and on the
28th of November, 1878, Dayton executed in the name of
the firm the said $1,100 note, and forwarded it by mail to
his father-in-law, Van Horn, stating to him what it was for,
and at the same time sent him a draft for $97.20, the same
being intended to cover interest on said $1,100 from the time
it had been paid in up to November 29, 1878, the date of
the said note.   The correspondence out of which this trans-
action grew, so far as shown by the evidence, consists of Day-
ton's letter to Van Horn of date February 8, 1878, marked
'U';  Van Horn's reply thereto, of date February 18, 1878,
marked 'No. 20';  Dayton's letter to Van Horn of date No-
vember 28, 1878, marked 'A';  and Van Horn's reply thereto,
dated December 3, 1878, and marked 'B.'   And said letters
are referred to and made a part of this finding.   It appears
also from the correspondence that some oral negotiations took
place between Dayton and Van Horn respecting the notes for
which the note in suit was given, but what said oral negotia-
tions were the evidence does not disclose.   None of the money

for which said $1,100 note was given went to the benefit of said firm of Dayton, Barber & Co., nor did Barber know of the existence of said note until after the death of Dayton, and, from all the evidence, facts and circumstances in the case, I find that this $1,100 note was a private and personal transaction between Dayton and Van Horn only.

"3½. The facts in relation to the $1,000 note, set out in the petition as plaintiff's second cause of action, are as follows: About January 31, 1878, the said firm of Dayton, Barber & Co. became financially embarrassed, owing to the failure of their banking correspondent at Kansas City, Mo.; and thereupon Dayton wrote Van Horn a letter of said date, advising him of their embarrassment, and requested him to deposit $2,000 to the credit of Dayton, Barber & Co., in the bank of their New York correspondent, Gilman, Son & Co., and in compliance with said request, on the 6th of February, 1878, Van Horn deposited with Gilman, Son & Co. the sum of $1,000, to the credit of Dayton, Barber & Co. The letter of Dayton, making this request, is dated January 31, 1878, is marked 'No. 8,' and is hereby referred to and made a part of this finding. On February 6, 1878, Van Horn telegraphed Dayton advising him that he had made said deposit of $1,000, and thereupon, on said day, Dayton wrote a letter to Van Horn containing the following: 'I have just received a telegram from you that you had forwarded $1,000 for our credit with G. S. & Co. I have sold you $1,000 in good notes, and taken them from ours and put them into an envelope for you, and will collect them when due for you. Accept my thanks.' On the same day Dayton took a number of notes that belonged to the bank, aggregating a little over $1,000, and he marked said notes 'paid' on the books of the bank, and withdrew them from the assets of the bank and put them apart for Van Horn. No note was given to Van Horn at this time, and what answer or response he made to the aforesaid letter from Dayton of February 8, 1878, does not appear. On February 18, Dayton wrote a letter to Van Horn, inclosing a draft for $216, of which $120 was interest at 12 per cent. for one year on the aforesaid $1,000, and he also inclosed the note of the firm for said $1,000. In his letter he stated the following in regard to the note and the original transaction generally: 'I will also inclose our note for this $1,000, as I believe we have never done so. As I stated to you at the time we received it, we sold to you $1,000

in good notes, and have kept turning them on short time, and will continue to do so, in the same way, but will also send you our note, so that you can have something more to show, and probably can keep track of it better.' Said letter is marked 'O,' and is made a part of this finding, and the answer of Van Horn of date February 24, 1879, marked 'No. 21,' is also made a part of this finding.   On February 7, 1881, Dayton executed, in the name of the firm, and sent Van Horn, as a renewal of said above-named note, a note of date February 7, 1881, due in one year, and drawing 10 per cent. interest, which is the note sued on in plaintiff's second cause of action herein.   See Dayton's letter to Van Horn of date February 7, 1881, marked 'No. 16,' which is made a part of this finding.   Barber knew at the time of this deposit by Van Horn of said $1,000 to the credit of the firm with Gilman, Son & Co., but he had no knowledge of the execution and delivery of either of the above-indicated notes until after the dissolution of the partnership.

"4. The facts in relation to the $4,000 note set out in the petition as plaintiff's third cause of action are as follows: Before the partnership of Dayton, Barber & Co. was formed, Dayton was in the banking business at Humboldt, Kas., with another gentleman, and Van Horn owned some $4,000 or $5,000 worth of Kansas notes and securities, some of which were in the hands of the last above-named firm for collection, and some Van Horn had in his possession, in Massachusetts. Dayton wrote Van Horn of the date March 3, 1875, proposing that, in the event he formed a new partnership, with defendant Barber, the new firm should purchase about $4,000 worth of Van Horn's notes and securities, for which the new firm should execute and deliver their note to Van Horn.   Van Horn accepted the proposition.   See Dayton's letter above indicated, marked 'No. 1,' and Van Horn's reply thereto, of date March 8, 1875, marked 'No. 15," which are made a part of this finding.   When the new firm of Dayton, Barber & Co. was formed, on April 1, 1875, this arrangement was consummated, and Dayton executed and forwarded to Van Horn the firm note for $4,000.   See letter of Dayton to Van Horn dated April 14, 1875, marked 'No. 2,' and Dayton's letter to Van Horn dated April 16, 1875, marked ' No. 3,' with 'statement' attached, which letters and statement are made a part of these findings.   Included among the notes the new firm bought, as above stated, was one given by the defendent, E.

A. Barber, to Van Horn for $1,000, on which interest was due amounting $17.50. Barber knew of the giving of this note for $4,000. This note was renewed April 1, 1879, by Dayton executing a new note in the name of the firm for the same amount, but with interest at the rate of 10 per cent. instead of 12, as in the original note. This last note was renewed again on the 5th of April, 1881, by Dayton executing a new note for the same amount, which is the note in suit. He executed it both individually and in the name of the firm; that is to say, he wrote 'we promise to pay,' etc., in the body of the note, and then signed as follows: 'B. H. DAYTON. Dayton, Barber & Co.' What the reason or motive might have been for executing the note in this manner does not appear.

" 5. The facts in relation to the note for $1,200, set out in the petition as plaintiff's fourth cause of action, are as follows: On or about December 6, 1877, the said firm of Dayton, Barber & Co. were financially embarrassed and needed money, and thereupon on said day Dayton wrote a letter to Van Horn requesting him to deposit $1,000 or $2,000 to their credit with the banking house of Gilman, Son & Co., of New York city. Van Horn so deposited $1,200, as requested, and thereupon, on being informed thereof, Dayton executed in the name of the firm, and sent to Van Horn, a note for $1,200, due in 60 days. See letter of Dayton to Van Horn of December 6, 1877, marked 'No. 6,' Van Horn's answer thereto, of date December 10, 1877, marked 'No. 19,' and Dayton's letter to Van Horn of date December 10, 1877, marked 'No. 7,' which letters are made part of these findings. Barber knew of the giving of this note. On January 29, 1879, Dayton executed, in the name of the firm, a new note bearing date December 6, 1878, being a renewal of the first note, which he forwarded to Van Horn, and is the note sued on in the fourth cause of action.

" 6. From time to time, Dayton made payments on these various notes of the interest. On the $1,100 note he had paid the interest up to November 30, 1884; the last payment he made on said note while he was still a member of the firm of Dayton, Barber & Co. was of date December 6, 1883. On the $1,000 he has paid the interest up to February 7, 1885; the last payment he made on said note while he was still a member of the firm of Dayton, Barber & Co. was of date February 20, 1884. On the $4,000 he has paid the interest up to April 1, 1885; the last payment he made on said note

while he was still a member of the firm of Dayton, Barber &
Co. was of date April 21, 1884.   On the $1,200 he has paid
the interest up to December 6, 1884; the last payment he
he made on said note while he was still a member of the firm
of Dayton, Barber & Co. was of date December 6, 1883.   His
method of making these payments, so long as he was a mem-
ber of the firm of Dayton, Barber & Co., was generally as
follows:  He had in his possession various notes as the agent
of Van Horn, that he was collecting and seeing after gener-
ally, and he and Van Horn were also operating together to
some extent in the buying and selling of grain, and Dayton,
seemingly for his own convenience, opened up an account on
the books of the banking firm of Dayton, Barber & Co. in
the name of C. Van Horn; when he collected or realized
anything for Van Horn, he would deposit it in the bank and
credit it to his said account, and, when it became necessary to
make Van Horn a payment, he, Dayton, would draw a check
for the amount, to which he would sign the name of C. Van
Horn, and then remit to Van Horn a draft, in the name of
Dayton, Barber & Co., for the amount of the check, and
charge Van Horn with the amount of the draft.   Van Horn
knew nothing about this account in the bank kept in his
name, and did not know that he was being paid in the above
manner.   He had the utmost confidence in the honesty and
integrity of Dayton, and reposed implicit trust in him, and,
from all the evidence, facts and circumstances in the case, it
is evident that Barber did the same.   In 1878, the said firm
of Dayton, Barber & Co. owned in equal right about 64
acres of land in Paulding county, Ohio, and about 160 acres
of land in Defiance county, Ohio, the title thereto of record
standing in the name of said B. H. Dayton.   For the pur-
pose (as the defendant Barber believed at the time) of paying
the $4,000 and the $1,200 notes, sued on herein, said Dayton
and his wife, on January 15, 1878, executed warranty deeds
of said Ohio lands to the plaintiff, Van Horn; that is, the
deeds were duly made out, signed, and acknowledged, and
transmitted by said Dayton to the proper office in Ohio for
record, where they were duly recorded, and, in compliance
with his request, returned to him.   Van Horn knew nothing
of this, and never heard of the deeds until upon the trial of
this case.   The deeds were never delivered to him, but were
found by Barber, a short time before the trial of this case,
among some old papers of Dayton's that had been left in the
bank."

"8. There have been introduced in evidence on the trial of this cause what purport to be two original deeds of the aforesaid land in Paulding county, Ohio, and one deed purporting to be a duly certified copy from the record of a deed to the said land in Defiance county, Ohio. The deeds to the Paulding county land purport to bear date November 6, 1879, and February 20, 1882, respectively; the first to George W. Horn for 20 acres of said land, for the consideration of $550; the second to Perry B. Daugherty for 47 acres of said land, for the consideration of $800, purporting to be executed by Chester Van Horn, the plaintiff, and Eliza Van Horn, his wife. To each of said deeds is a certificate of acknowledgment, of the same date as the deeds, signed by said B. H. Dayton as a notary public, and authenticated by his notarial seal. Said deeds were duly recorded in the proper offices in Ohio — the first on the 11th day of June, 1880, and the second on the 29th day of July, 1882. The aforesaid deed that purports to be a certified copy of the record of the original purports to be dated March 5, 1881, to be signed by Chester Van Horn, the plaintiff, and Eliza Van Horn, his wife, and purports to convey the aforesaid Defiance county, Ohio, land to one James H. Frost, for the consideration of $5,000. A certificate of acknowledgment is attached to said deed, signed by said B. H. Dayton as a notary public, and authenticated by his notarial seal. Said deed was duly filed for record in the proper office on March 28, 1881. The said Chester Van Horn never signed either or any of the aforesaid deeds, nor did his wife. Said Chester Van Horn never saw either or any of said deeds or knew of them until they were introduced in evidence on the trial. His signature and that of wife were forged to each of said deeds; and in order that no cloud may rest upon the living, it is only justice to say that the responsibility for each and all of said forged deeds, in the light of all the evidence in the cause, rests *solely* upon B. H. Dayton.

"9. I find that B. H. Dayton, acting in the name of the firm of Dayton, Barber & Co., on or about March 28, 1881, received from the proceeds of the sale of the Ohio land to James H. Frost the sum of $4,250, which he passed to the credit of the plaintiff, Van Horn, in the said bank of Dayton, Barber & Co., in the said account of Van Horn mentioned in these findings. Said Dayton, acting as above, received, on or

about December 4, 1879, from the sale of the Ohio land sold to George W. Horn, the sum of $494.22. None of this last-mentioned sum went into the business of the firm of Dayton, Barber & Co., but what actual disposition was made of it does not clearly appear. Said Dayton further received, as above, on or about March 7, 1882, from the sale of the Ohio land to Perry B. Daugherty, about $748.50. Of this he deposited in the aforesaid bank, in the aforesaid account of Van Horn, to the credit of said Van Horn, $400. What disposition was made of the residue does not clearly appear. None of it, however, went into the business of said firm of Dayton, Barber & Co. Van Horn had no knowledge of these matters, or of the aforesaid deposits, and nothing has been paid him on the notes sued on, except as hereinbefore found and stated.

"10. From the 1st day of September, 1885, up to the time of the commencement of this action, the defendant, E. A. Barber, was absent from the state of Kansas and outside of said state for at least 33 days. This action was commenced on the 31st day of December, 1888."

Thereon the court made the following conclusions of law:

"1. The plaintiff is not entitled to recover on the notes for $1,100 and $1,000, being the notes set out in the first and second causes of action in plaintiff's petition.

"2. The plaintiff is entitled to recover on the $4,000 note, set out in the plaintiff's third cause of action, the sum of $4,000, with 10 per cent. interest thereon from April 1, 1885.

"3. The plaintiff is entitled to recover on the $1,200 note, set out in plaintiff's fourth cause of action, the sum of $1,200, with 10 per cent. interest thereon from December 6, 1884; and for the amount of the two last-mentioned notes, with interest as above indicated, and the costs of this action, judgment will rendered in favor of the plaintiff, and against the defendant."

Subsequently, judgment was rendered in favor of Van Horn against Barber upon two of the notes, one of $4,000, dated April 1, 1881, and one of $1,200, dated December 6, 1878, amounting, with interest, after deducting the amount Van Horn had received from the Dayton estate, to $6,193.40, bearing 10 per cent. interest. The court refused to give judgment against the defendant upon the other two notes, one of

$1,100, dated November 30, 1878, and the other of $1,000, dated February 7, 1881. Barber brings the case here as to the judgment rendered againt him, and Van Horn has filed a cross petition in error as to the notes upon which judgment was denied. After proceedings in error were commenced in this court, C. Van Horn died, and Chester J. Dayton, the administrator of the last will and testament of C. Van Horn, was substituted as defendant in error.

*E. A. Barber*, and *J. B. F. Cates*, for plaintiff in error.

*J. D. McCleverty*, and *G. A. Amos*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: C. Van Horn, a person of considerable wealth, resided at Springfield, Mass. B. H. Dayton was his son-in-law, having married his only daughter. On April 1, 1875, B. H. Dayton formed a partnership with E. A. Barber, under the firm name of Dayton, Barber & Co., to carry on the business of private banking at Humboldt, in this state. Dayton was the active manager of the banking business. Barber was a practicing lawyer, and attended to the collections of the firm. On September 1, 1884, the firm dissolved by mutual consent. Dayton died the 6th of October, 1885. At the time of his death, Van Horn had in his possession four notes signed by Dayton, Barber & Co.: One for $1,100, dated November 30, 1878; another for $1,000, dated February 7, 1881; a third for $4,000, dated April 1, 1888; and a fourth for $1,200, dated December 6, 1878. After the death of Dayton, and on October 23, 1886, Van Horn filed in the probate court of Allen county his demands against the estate of B. H. Dayton, deceased. The property of the estate was insufficient to pay all his claims, and on the 31st of December, 1888, Van Horn commenced his action against E. A. Barber, as a member of the late firm of Dayton, Barber & Co., to recover the amount of these notes signed by Dayton, Barber & Co., aggregating $7,300 and interest.

Barber claims, and the trial court found, that he was not

liable as a member of the firm of Dayton, Barber & Co., or otherwise, upon the $1,100 note or the $1,000 note. The $1,100 note was given for certain notes placed by Van Horn in the hands of Dayton for collection. None of the money for which this note was given went for the benefit of Dayton, Barber & Co., and Barber knew nothing of the exis·ence of the note until after the death of Dayton. The court seems to have found that the $1,000 note was without any consideration, as the amount it represented had prior to its date been paid or satisfied by Dayton taking for Van Horn, from the firm of Dayton, Barber & Co., $1,000 in good notes, which was to pay the firm debt. Van Horn, on February 6, 1878, was fully notified by Dayton by letter of his action, and in his letter to Van Horn he stated that he had "put the notes into an envelope for him and would collect them for him when due." Barber insists that the $1,200 and $4,000 notes were paid from the proceeds of the sale of Ohio land belonging to the firm of Dayton, Barber & Co., in 1879, 1881, and 1882. The original $4,000 note was given April, 1875, and due in five years. He claims that on April 1, 1879, that note, after it was paid, was surrendered, and a new one given by Dayton with the firm name, without his knowledge or consent; and that subsequently this second note was surrendered, and the $4,000 note sued on was executed, on April 5, 1881, by Dayton without his knowledge. He further claims, that the original $1,200 note was given December 6, 1877, due in 60 days; that on January 29, 1879, after the note had been paid, it was surrendered, and a new one executed by Dayton without his knowledge, and dated back to December 6, 1878. The books of Dayton, Barber & Co. show that the $1,200 and $4,000 notes to Van Horn were canceled at the time of the receipt of the proceeds of the sale of the Ohio land belonging to Dayton, Barber & Co., and thereafter Barber had no knowledge of the existence of the notes, or the renewal thereof, or that any interest had been paid thereon. The trial court rendered judgment in favor of Van Horn against

Barber upon the $1,200 and $4,000 notes and interest, aggregating $7,644.40, less the $1,451 collected upon the demand filed by Van Horn in the probate court against the estate of B. H. Dayton, deceased. This made the judgment, as rendered, $6,193.40. The facts attending the execution of the various notes sued upon are stated fully in the findings of the trial court and in the correspondence between Dayton and Van Horn.

Since this case was tried in the court below, Van Horn has died, leaving as his heirs, his daughter, Mrs. B. H. Dayton, and her children. Chester J. Dayton, one of the children, is the executor of the last will and testament of Van Horn, and since his death has been substituted as the defendant in error. But this case, as presented to us, must be decided, as to all the legal questions involved in the review of the rulings of the trial court, as if C. Van Horn, the plaintiff below, were the defendant in error in this court.

It is conceded that the money evidenced by the $1,200 and the $4,000 notes went into the firm of Dayton, Barber & Co. for the benefit of that firm, with the knowledge and consent of both of the members. This money has never been actually paid to Van Horn. The court expressly found that nothing has been paid upon these two notes except interest. It appears from the findings that $5,498.72, a sum sufficient at the time to pay the $1,200 and $4,000 notes, being the proceeds of land in Ohio belonging to Dayton, Barber & Co., went into the hands of B. H. Dayton, and that he placed $4,656 of this to the credit of Van Horn in the bank of Dayton, Barber & Co., the balance received by Dayton not being accounted for. If Dayton had notified Van Horn that he had received and held this money for his benefit, or if Van Horn had authorized him to deposit any money in the bank to his credit, or if, after the money had been deposited, he had been notified or had personally used any part thereof, then the contention that the notes were paid would be good. But Van Horn never saw the deeds of the Ohio land, and never

knew anything about them until they were offered upon the trial. He never gave authority to Dayton to take the deeds in his name, and never authorized Dayton to sell any land in Ohio for him.

The account which was kept by Dayton in the bank of Dayton, Barber & Co. to the credit of Van Horn was for Dayton's own convenience, and Van Horn knew nothing about the account and never drew out any part of it. To pay interest upon the notes at various times, Dayton drew from this account by checks, which he would sign with the name of C. Van Horn, and then remit the amount thereof to Van Horn in a draft in the name of Dayton, Barber & Co., but Van Horn did not know he was being paid in that way. Dayton, Barber & Co. were responsible for Dayton's conduct as a member of the firm, not Van Horn. Both Van Horn and Barber had the utmost confidence in the honesty and integrity of Dayton, and imposed implicit trust in him. That confidence was grossly betrayed by Dayton. He fraudulently deceived Barber, his partner, in pretending to him that the proceeds of the Ohio land had been used for the payment of these notes. For this deception, Van Horn was not responsible. Every partner is a general agent of the firm to carry out and transact its business in the usual and ordinary way. The knowledge of Dayton concerning the partnership matters was constructively the knowledge of Barber. Dayton knew that the proceeds of the Ohio land had not been turned over to Van Horn, and, in the eye of the law, Barber had the same information.

1. Partner—agent of the firm.

3. Partnership matters—constructive knowledge.

In the transaction of the partnership business of Dayton, Barber & Co., Dayton was not acting as the agent of Van Horn, and in order to charge Van Horn with the deception practiced by Dayton, Van Horn must have had notice thereof or participated therein. Van Horn, not being a member of the partnership, cannot be charged with knowledge of the acts or conduct of the members not actually brought to his

attention.  The original notes of $1,200 and
$4,000 and their several renewals were the acts
of the partners; for it is the general principle re-
lating to commercial or trading partnerships that
each partner is the lawful agent of the partnership in all
matters within the apparent scope of the business.  (*Deitz v.
Regnier,* 27 Kas. 94.)

2. Power of
partner—
apparent
authority.

It is argued that Dayton was the authorized agent of Van
Horn to collect the money from Dayton, Barber & Co., and
having received the money from the firm and applied it to
his own use, that Van Horn's notes have been discharged.
But Van Horn gave no direction to Dayton, or to Dayton,
Barber & Co., for Dayton to collect or receive for him the
proceeds of either the $1,200 or $4,000 note; and the court
expressly refused to find, although requested so to do by Bar-
ber, that Dayton was the general agent of Van Horn.
Again, it is insisted, as Van Horn presented and was allowed
his demand against the Dayton estate, which amounted to over
$17,000, for money held by Dayton and retained by the con-
sent of Van Horn, which included the notes sued on, that
this established that Dayton received the proceeds of the
Ohio land as the agent of Van Horn.  But the demand by
Van Horn against the Dayton estate was evidence only.  It
was not conclusive upon the trial court.  At the time Van
Horn filed his demand against the estate of Dayton, he was not
fully informed of the deception and fraud practiced by Day-
ton while he was a member of the firm of Dayton, Barber &
Co.  The other evidence in the case showed that Dayton had
not collected the $1,200 and $4,000 notes with the consent
of Van Horn, or retained any of the proceeds of the Ohio
land with his knowledge.  Where there is positive evidence
to sustain the findings of the trial court, this court cannot
disturb the same.

It is further insisted, that as the $4,000 note, dated April
5, 1881, was signed by "B. H. Dayton" as well as by "Day-
ton, Barber & Co.," Van Horn was notified thereby that the
note was primarily the debt of Dayton, and not of the firm,

and therefore that the firm was relieved, upon the ground that it is no part of the business of a firm to act as surety for others, or to pay the private debts of a member thereof. In this connection, it must be recollected that the original $4,000 note, of which the note of April 5, 1881, was a renewal, was given for the debt of the firm, not for the individual use of Dayton; and Van Horn had the right to assume that the last note was executed for the benefit of the firm, not for the use of Dayton. If any evidence had been introduced that Van Horn had notice that Dayton had in his possession on April 5, 1881, moneys of the firm for the express purpose of paying the note, and had notified Barber that the same would be used for that purpose, and that thereafter he had accepted such a note, Barber might be released; but the effect to be given to the circumstance of Van Horn taking the joint and several note of B. H. Dayton and Dayton, Barber & Co. in considering whether Van Horn knew or ought to have known the note was executed without the knowledge of Barber, or in fraud of his rights, was a question for the determination of the trial court. (*Sherwood v. Snow*, 46 Iowa, 491.)

*4. Renewal note, binding upon firm.*

*5. Note, signed by individual name and firm name.*

The suggestion that Dayton had notes and mortgages in his hands as collateral to secure the payment of the $4,000 note is not sustained by the findings of the court or the evidence, and, therefore, Van Horn was not compelled to attempt to exhaust such securities, which did not exist, before proceeding against Barber. Evidently the indorsement by Dayton upon the note to that effect was false and untrue. At that time, he did have the proceeds of the Ohio land with which to pay the note, but disposed of the same without paying Van Horn. None of these proceeds can be traced to Van Horn, except the interest which Dayton paid therefrom in the name of Dayton, Barber & Co.

Finally, it is insisted that the notes were barred by the statute of limitations, upon the ground that the interest was paid by Dayton on account of his individual liability, and

not that of the firm.   But when Dayton was paying interest on the notes he was acting for the firm, unless Van Horn had notice to the contrary.   Van Horn had no such notice. In paying such interest Dayton was not the agent of Van Horn.

This case was tried by a very able, experienced, and painstaking judge, who found in favor of plaintiff below on the two notes last referred to.   After a careful examination of the facts disclosed upon the trial and the decision cited, we cannot find any solid ground upon which to rest a reversal of the judgment upon these two notes.

Upon the cross petition, it is insisted that the plaintiff below, upon the findings of fact, was entitled to judgment upon the $1,100 note, of November 30, 1878, and the $1,000 note, of February 7, 1881.   *Deitz v. Regnier*, supra, is cited as decisive. All the equities are in favor of Barber being relieved from any liability upon these two notes.   The wife and children of B. H. Dayton ought not to be assisted, in the nature of things, beyond the strict letter of the law in recovering any money or property from Barber on account of the fraud practiced by Dayton upon his partner.   None of the money for which the $1,100 note was given went to the benefit of the firm of Dayton, Barber & Co.   The court made the finding as to that note that it was a private and personal transaction between Dayton and Van Horn only.   Dayton, with the knowledge of Van Horn, paid the debt for which the $1,000 note was given by taking from the firm good notes aggregating over $1,000, and agreeing with Van Horn to collect them personally for his benefit.   Van Horn, after full notice, trusted Dayton, not the firm, for the collection of these notes, and if he has not received the proceeds of the same, Barber is not responsible.

The prayer of the cross petition will be denied.   The judgment will be affirmed.

All the Justices concurring.