No. 29,356.

THE GUARANTEE TITLE AND TRUST COMPANY, Trustee, *Appellee*, v. JOHN REINHART et al., *Appellees* (ROY T. WINGFIELD and THE BENTON & HOPKINS INVESTMENT COMPANY, *Appellants*).

(288 Pac. 549.)

Opinion filed June 7, 1930.

*W. S. Langmade, Wallace T. Wolfe,* both of Oberlin, *Bennett R. Wheeler, S. M. Brewster, J. L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellants.

*James L. Haley,* of Sabetha, and *John C. Mullen,* of Falls City, Neb., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal controversy in this litigation arises over an alleged assumption of a mortgage indebtedness made in an exchange of parcels of real estate. John Reinhart and Katie Reinhart, his wife, owned real estate in Florence, Marion county, upon which they had given a mortgage to the Guarantee Title and Trust Company to secure a loan of $5,700. The Benton & Hopkins Investment Company, hereinafter designated as the Investment company, of which Roy T. Wingfield was secretary, owned a tract of land in Colorado upon which there was an encumbrance of $2,600. Through an agent, A. R. Pautz, an exchange of properties was arranged. A contract was prepared in which the Reinharts agreed to accept the Colorado land and to assume and pay the $2,600 encumbrance thereon, and that the Investment company would accept the Florence property for the Colorado land, and as a part of the purchase price would assume and pay the mortgage on the Florence property which had been owned by Reinhart. In making the contract the Investment company was represented by Wingfield, its secretary, who participated in the negotiations and who signed the contract in this way: "The Benton & Hopkins Inv. Co., by Roy T. Wingfield." The Reinharts were not present when the contract was signed by the Investment company and it was stipulated that it was made subject to the approval of the Reinharts and, if approved and signed, that deeds of conveyance should be executed by the respective parties, these to be held in escrow by Pautz, the agent, with the understanding that as soon as parties had approved of abstracts of title covering the property which they were receiving, and the escrow agent notified the parties of the approval, the deeds were to be delivered. The contract was subsequently signed by the Reinharts, and at the end of about fifty days the deeds were delivered to the respective parties. Each deed recited that the grantee assumed and agreed to pay the encumbrances existing upon the property conveyed to each grantee. The Investment company failed to pay the interest or principal on the mortgage debt against the Kansas property which it had acquired, and an action was brought by the Guarantee Title and Trust Company to recover from the Reinharts the amount due on the notes or bonds which they had signed, and which had been secured by mortgage on the Kansas property. The Reinharts, having executed the notes, had no defense to make as against the plaintiff, and personal judg-

ment was entered against them on the notes in the amount of $6,702.25 with the direction that execution be issued upon the judgment. The Reinharts paid this judgment and in a cross petition in the action they asked for the amount which they were required to pay in satisfaction of the judgment based upon the debt which had been assumed in the exchange of properties. Issues were joined on their claim and the alleged assumption was tried out between Reinhart and wife on one side and the Investment company and Wingfield on the other. In the further hearing on this issue judgment was given in favor of the Reinharts against both the Investment company and Wingfield. It is contended on the part of the Investment company and Wingfield that the contract of assumption was not properly executed nor delivered; that under the testimony Wingfield had no authority to execute the contract for the Investment company, and that the evidence failed to show that the Investment company knew that the contract of assumption had been made or that the exchange of properties was made in pursuance of the contract.

On the issue of the authority of Wingfield to act for the Investment company the Reinharts apparently had difficulty in producing direct evidence of his authority to make a binding contract. There was testimony to show that he was the secretary of the company and had admitted that he signed the name of the company to the contract, but further stated that he was not authorized to do so. He did state in answer to a question that as secretary he had authority to bind the company in contracts concerning the sale of real estate. Pautz, who conducted the negotiations leading up to the contract, testified that the Investment company had listed other lands for sale, and that he had handled real-estate deals with Secretary Wingfield. When the deed of the Colorado property was forwarded through the mail, the envelope bore markings showing it came from the Investment company. Recognizing the shortness of direct evidence to show Wingfield's authority, the Reinharts relied largely on the ratification of the transaction by the Investment company. The court instructed the jury that even if the Investment company had not previously authorized Wingfield to sign the contract, they would be bound by it if afterwards it ratified the same. There was testimony to the effect that the company executed the deed to the Colorado land, which it owned, and which was made in pursuance of the contract, and the deed executed by the Reinharts to the Kansas property was sent to the company and in that deed the assumption of the mortgage was recited. It also appears that

the deed was never returned to the sender. The contract provided that the deed should be made to the company or to a party it might designate. It was made to Wingfield. There was plenty of time for the Investment company to investigate not only the abstract of title to the property, but also the provisions of the contract which its secretary had made for it, and forty-two (42) days after the contract was signed it executed the deed of its Colorado land to the Reinharts. A letter was sent by Reinhart to the company calling attention to the fact that the interest on the mortgage debt of the Kansas property had not been paid. To that notice the vice president wrote the following letter:

"We received your letter of recent date in regard to the loan on the Florence garage, and have been trying to see Mr. Wingfield, who is looking after this property for a client, but he has been very busy and has been almost continuously away from home on trips, but we are sure he will look after the matter just as soon as he gets a moment's time."

Notwithstanding it is claimed that Wingfield violated his duty and obligation to the Investment company in signing the contract without authority, the evidence shows that Wingfield still holds the position of secretary of the company; that he has charge of from three hundred to five hundred quarter sections of land for the company which includes lands handled for other people, and it also appears that there was no disavowal or repudiation of Wingfield's acts by the company until this action was brought. The Investment company appears to have transacted business for Reinhart after the delivery of the deeds, in that the interest on the mortgage loan upon the Colorado land deeded to Reinhart was remitted by Reinhart through the Investment company. We think the acts of the Investment company, taken together, were sufficient to justify the jury in finding that the company had adopted and ratified the acts of Wingfield in the execution of the contract which he made for it, stipulating that the company would assume and pay the mortgage debt on the Kansas property. It has joined in the carrying out of parts of that contract and has availed itself of some of its benefits. It has not only procured the exchange of properties as agreed upon, but it has induced Reinhart to assume the $2,600 lien on the Colorado land and thus relieved itself from the payment of that liability.

It is well settled that if a principal who knowingly adopts and accepts the fruits or benefits of a contract made by an agent who had

assumed to act with authority and had signed the name of the principal, but who was not authorized to do so, the principal is bound to the same extent as if express authority had been given the agent at the outset. If any part of the contract is adopted and ratified it operates as a ratification of the whole. (*Aultman v. Knoll*, 71 Kan. 109, 79 Pac. 1074.) In that case it was said:

"In adopting the unauthorized conduct of its agent, the plaintiff was obliged to inquire and ascertain the full extent of it or be bound in the same manner as if it had done so, and it cannot now enforce a portion of Lowell's agreement without assuming all the liabilities attached to it." (p. 115.)

Quoting from an authority on agency, the court added:

"It is a fundamental rule that if the principal elects to ratify any part of the unauthorized act he must ratify the whole of it. He cannot avail himself of it so far as it is advantageous to him, and repudiate its obligations; and this rule applies not only when his ratification is express but also when it is implied." (p. 115.)

See, also, *Latham v. National Bank*, 40 Kan. 9, 18 Pac. 824; *McKinstry v. Citizens' Bank*, 57 Kan. 279, 46 Pac. 302; *Isaacs v. Motor Co.*, 108 Kan. 17, 193 Pac. 1081; *Petroleum Co. v. Gas & Fuel Co.*, 112 Kan. 73, 209 Pac. 826; *White Sewing Machine Co. v. Edwards*, 120 Kan. 151, 242 Pac. 129.

The Investment company recognized the authority of its agent to dispose of its Colorado land, and also to secure an assumption of the mortgage debt thereon by Reinhart, and having ratified the contract to the extent that it was advantageous to the company, there is carried with it, also, the ratification of the part more burdensome, namely, the assumption of the mortgage debt on the Kansas property received in exchange for its property in Colorado.

There is a contention that the clause of assumption in the contract was placed there after the signatures of the Investment company and Wingfield had been attached to it. Although there is some dispute in the testimony as to this point, there appears to be sufficient evidence to show that the contract was complete when it was signed and included all the provisions set out in the contract produced in evidence. Questions of fact on disputed evidence are conclusively determined by the finding of the jury.

Complaint is made of some of the instructions that were given. While those complained of are general in their terms, we find no error in them. It is said that they should have been more specific in some respects, but it does not appear that more elaborate or specific instructions were requested by the defendants.

A question is raised as to the right of the Guarantee Title and Trust Company to bring the action and obtain the judgment against the Reinharts or that jurisdiction was acquired over the defendants, as it was not sufficiently alleged and shown that the Guarantee Title and Trust Company was the owner of the bonds or notes sued upon. It is further said that the notes were secured by a mortgage on property in Marion county and the lien was necessarily enforceable in that county and not in Nemaha. The suit against the Reinharts was brought to recover the debt and not to foreclose the mortgage, and no good ground is seen for these complaints. The record discloses that only a personal judgment was asked and given. The defendants came into court and filed pleadings and raised issues which the court tried out, and having thus submitted itself to the jurisdiction of the court it had the power to render a judgment against them.

Other questions discussed are held to be without merit.

Finding no reversible error in the record, it follows that the judgment must be affirmed. It is so ordered.