**E. F. CORPORATION, Petitioner-Appellant,**

v.

**Arvel C. SMITH, Trustee in Bankruptcy for Rosen Oil Corporation, Bankrupt, Respondent-Appellee.**

**Carl L. WETTIG and James R. Schmitt, Petitioners-Appellants,**

v.

**Arvel C. SMITH, Trustee in Bankruptcy for Rosen Oil Corporation, Bankrupt, Respondent-Appellee.**

**Nos. 73-1565 and 73-1566.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1974.

Decided May 6, 1974.

**828**

Carl L. Wettig, Wichita, Kan. (Wettig, Southard & Caro and James R. Schmitt, Wichita, Kan., on the briefs), for petitioners-appellants.

C. Robert Bell, Jr., Wichita, Kan. (David C. Adams, Wichita, Kan., on the briefs), for respondent-appellee.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These two appeals arise out of the bankruptcy of Rosen Oil Corporation. E. F. Corporation, the petitioner-appellant in No. 73–1565, and Carl L. Wettig and James R. Schmitt, the petitioners-appellants in No. 73–1566, each filed proof of claim and a reclamation petition alleging secured status and seeking the pledged collateral and full allowance of their claims. As to E. F. Corporation the referee denied secured status except as to an $8,000 item secured by a mortgage on specific property. The claims of Wettig and Schmitt were denied secured status. On petitions for review the United States District Court for the District of Kansas affirmed the referee. Respondent-appellee Arvel C. Smith is the trustee of the bankrupt estate.

E. F. Corporation is the financing and collecting arm of Elmer Fox & Company, a certified accounting firm which rendered accounting services for the bankrupt. In November, 1971, bankrupt owed Elmer Fox $20,000 for accounting services rendered. Future accounting services were contemplated. Pursuant to a demand for security on the old debt and for the future work, bankrupt gave Elmer Fox a note for $40,149.44 secured by a mortgage and security interests in certain oil properties. The papers were executed by two of bankrupt's directors without prior authorization. Future services were rendered. On February 28, 1972, Rosen Petroleum Corporation, the parent of the bankrupt, was billed for $16,110 and on May 25, 1972, for $3,900. The petition in bankruptcy was filed on May 26, 1972. Elmer Fox claims that the billing to the parent was an inadvertent oversight. The referee held that Elmer Fox was a secured creditor only for the $8,000 still owing on the original $20,000 debt.

At the same time that Elmer Fox was given the mentioned note and security interests, it bought from Wettig and Schmitt a first order security interest on bankrupt's office furniture. The referee held that Elmer Fox was not a holder in due course because the obligation of Wettig and Schmitt, upon which the assigned note was based, was past due by $3,850.56.

Wettig and Schmitt were law partners, and did legal work for bankrupt.

Wettig was general counsel for, and assistant secretary of, the bankrupt corporation. In January, 1971, two of the bankrupt's directors, to secure money owed by bankrupt for legal services rendered, executed a $20,000 note in favor of Wettig and Schmitt together with a mortgage and security interests covering certain oil properties. As to this transaction the referee held that the instruments were improperly executed and not ratified. Accordingly, he denied secured status.

■ All of the claimants argue that the referee and the district court erred in permitting the trustee to challenge the validity of the corporate mortgages. The point was not raised before the referee, was not presented in the petitions for district court review, was not determined by either the referee or the district court, and is argued for the first time on these appeals. Accordingly, the issue merits no consideration here. Eureka-Carlisle Company v. Rottman, 10 Cir., 398 F.2d 1015, 1019, and Stadia Oil & Uranium Company v. Wheelis, 10 Cir., 251 F.2d 269, 276. No exceptional circumstances require its consideration to prevent manifest injustice. Cf. Gomes v. Williams, 10 Cir., 420 F.2d 1364, 1367.

■ Another preliminary matter relates to the November, 1971, secured note given by bankrupt to Elmer Fox. The then pre-existing debt was $20,000, of which $8,000 was unpaid at the time of bankruptcy. The referee allowed this as a secured claim. The trustee argues that this allowance is erroneous because the bankrupt corporation did not ratify the execution of the note and mortgage. The difficulty is that the trustee did not petition the district court for review of the referee's order and, hence, the order became final. 11 U.S.C. § 67(c). Cf. Potucek v. Cordeleria Lourdes, 10 Cir., 310 F.2d 527, 529–530, cert. denied, 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 134. Implicit in the referee's finding is the validity of the note and mortgage insofar as the pre-existing debt is concerned. The question of future advances will be discussed later in this opinion.

The documents relating to the January, 1971, transaction between bankrupt and Wettig and Schmitt were executed on behalf of the bankrupt by two directors who did not have prior authorization. Bankrupt had three directors. Signed corporation minutes show a purported meeting of bankrupt's shareholders and another meeting of bankrupt's directors. These state that at each meeting a resolution was adopted ratifying and approving "each and all of the acts, deeds and doings taken and performed by the corporate officers and directors" since the last annual meeting. Actually, neither of the meetings was held. The bylaws of the bankrupt provide that written resolutions signed by all three directors are valid even though no meeting was held. The referee found that the transactions in question were undertaken by directors Rosen and Herrington without consultation with director Smith, and that the minutes were a sham.

■■ For ratification to be efficacious, it must be made with knowledge of the material facts. Western National Bank v. Armstrong, 152 U.S. 346, 352, 14 S.Ct. 572, 38 L.Ed. 470, and Gaynor v. Buckley, 9 Cir., 318 F.2d 432, 435. Cf. Knox v. First Security Bank of Utah, 10 Cir., 206 F.2d 823, 826. Kansas law is in accord. Allison v. Borer, 131 Kan. 699, 293 P. 769, 772, and Whitewater Telephone Co. v. Cory, 117 Kan. 463, 232 P. 609, 610. The record sustains the referee's finding of lack of knowledge on the part of director Smith and is binding on us. In re O'Bannon, 10 Cir., 484 F.2d 864, 867.

■ The argument that the bankrupt is estopped to question the transaction by acceptance of benefits has no merit. The interests were created in Wettig and Schmitt to secure an existing indebtedness. No fresh consideration moved to the bankrupt. Acceptance of benefits, in order to have a binding result, must be with knowledge. Western National Bank v. Armstrong, 152 U.S. 346, 352, 14 S.Ct. 572, 38 L.Ed. 470, and Guarantee Title & Trust Co. v. Rein-

hart, 130 Kan. 798, 288 P. 549, 551. In our opinion the January, 1971, transaction with Wettig and Schmitt was not authorized, was not ratified, and was properly rejected by the referee and the district court as insufficient to establish preferred status.

■ On April 18, 1972, within about six weeks of the bankruptcy petition, bankrupt executed a note in favor of Wettig and Schmitt for $3,330, allegedly secured under the future advance clause of the January, 1971, mortgage. The referee and the district court held that the transaction was a voidable preference within the definition of § 60(a) of the Bankruptcy Act, 11 U.S.C. § 96(a). We agree. The transfer was for the benefit of a creditor on account of an antecedent debt. We have noted above the invalidity of the mortgage. Accordingly, the transfer had nothing to relate back to, and was therefore within four months of bankruptcy. The referee's finding that Wettig had reasonable cause to know of the insolvency has substantial evidentiary support and is binding on us. We reject Schmitt's contention that Wettig's knowledge is not imputable to him. The proof of claim and the petition for reclamation are in the name of the partnership. Under Kansas law knowledge of one partner is constructively the knowledge of all members of the partnership. Bigelow v. Henniger, 33 Kan. 362, 6 P. 593, 594, and Barber v. Van Horn, 54 Kan. 33, 36 P. 1070, 1075. We have here all of the elements of an impermissible preference.

■ The security interest which Elmer Fox obtained in November, 1971, noted that the covered office equipment was subject to a first mortgage to Wettig and Schmitt. To improve its position, Elmer Fox paid Wettig and Schmitt $3,850.56 for assignment of the first mortgage and a predated note of bankrupt in the noted amount. The referee held that the note was past due and that Elmer Fox had knowledge of that fact. The record sustains the referee. Under K.S.A. § 84-3-302(1)(c) Elmer Fox was not a holder in due course and

took the security interest subject to the same infirmity that was present when it was held by Wettig and Schmitt. We have held that the security interest was not a binding obligation of the bankrupt because of the lack of authorization and ratification. Elmer Fox may not recover on this item.

This brings us to the future advance problem arising out of the November, 1971, transaction between bankrupt and Elmer Fox. We have upheld the referee and district court in the award of $8,000 to Elmer Fox as the unpaid portion of the debt which pre-existed the transaction. Elmer Fox contends that the debt created by the performance of accounting services within the period of four months before bankruptcy relates back to the November transaction and, hence, is not an impermissible preference.

■ Under § 60(a)(2) of the Bankruptcy Act, 11 U.S.C. § 96(a)(2), a transfer is made "at the time when it became so far perfected that no subsequent lien upon such property * * * could become superior to the rights of the transferee." The time of transfer is determined by federal law, but state law determines the perfection of the right. McKenzie v. Irving Trust Co., 323 U.S. 365, 370, 65 S.Ct. 405, 89 L.Ed. 305. The relevant state statute is Art. IX of the Uniform Commercial Code as adopted in Kansas. K.S.A. § 84-9-101 et seq. The issue is when a security interest becomes so far perfected as to cut off the rights of subsequent lien holders.

■ So far as is pertinent § 84-9-303(1) provides that a security interest is perfected "at the time when it attaches." Section 84-9-204(1) determines when a security interest attaches, and says that such interest cannot attach until "value is given." Section 84-1-201(44) says that a person gives value by "a binding commitment to extend credit" or by "consideration sufficient to support a simple contract." Thus, we are confronted with the issue of whether Elmer Fox made a binding commitment in November, 1971, to render future services, or whether the value was not

given until the services were performed in 1972. The date of the transfer is the date when value was given. 4A Collier on Bankruptcy, ¶ 70.82 at 942–945, and esp. n. 10a (14th ed.).

We are aware of the decisions holding that the filing of a financial statement before the four-month period immunizes a security interest from a claim of preference. See e. g. DuBay v. Williams, 9 Cir., 417 F.2d 1277, 1287–1289 (accounts receivable); Grain Merchants of Indiana, Inc. v. Union Bank and Savings Company, Bellevue, Ohio, 7 Cir., 408 F. 2d 209, 212–213 (accounts receivable); and In re Wilco Forest Machinery, Inc., 5 Cir., 491 F.2d 1041, 1046–1047 (after-acquired inventory). In those cases money had been lent and the question was whether the security interest attached to items which came into existence within the four-month period. Our situation is different. We are not concerned with the nature and extent of the security interest but rather with the right of the creditor to a preferred status on the basis of personal services rendered within the four-month period. The mentioned cases seek "to make security transactions conform to the legitimate needs of commerce * * *." 417 F.2d at 1289. Accordingly, they read § 60(a)(2) as saying that the transfer occurs when the right is "perfected" by the filing of the financial statement.

The difficulty is that state law determines the perfection of the right. 323 U.S. at 370. Under Kansas law a security interest is perfected when it attaches, and it attaches when value is given. Section 84–9–301 provides that an unperfected security interest is subordinate to a lien creditor without knowledge and that a trustee in bankruptcy is a lien creditor. The comment to § 84–9–301 says:

"As in Section 60 of the Federal Bankruptcy Act, the term 'perfected' is used to describe a security interest in personal property which cannot be defeated in insolvency proceedings or in general by creditors. A security interest is 'perfected' when the secured party has taken whatever steps are necessary to give him such an interest. These steps are explained in the five following sections (9–302 through 9–306)."

One of the mentioned sections, § 84–9–303, says that perfection occurs "when it has attached" and all the applicable steps have been taken. Attachment takes place when value is given. The only claim of value here is that of a binding commitment to render future accounting services.

 We agree with the referee and the district court that Elmer Fox was not bound in November, 1971, to perform future accounting services, and that when the services were voluntarily performed within the four-month period Elmer Fox had reasonable cause to know of insolvency. Value was given when the services were performed and not until then. Accordingly, there was no relation back to the November transaction and the claim of secured status falls.

We see no conflict between this result and the holdings in the accounts receivable and after-acquired inventory cases. In those cases the benefit had been received by the bankrupt before the four-month cutoff. In the instant case it had not. To permit relation back of a claim for voluntary personal services within the four-month period would provide a loop hole which, in our opinion, was not intended by either the Bankruptcy Act or the Uniform Commercial Code. Secured status was properly denied for the amount due on account of the personal services in question.

In each appeal the judgment is affirmed.