### FISHER v. SIMONS et al.

(Circuit Court of Appeals, Third Circuit. November 2, 1894.)

#### No. 5.

NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDERS—NOTE BORROWED BY BANK.
A negotiable promissory note for $5,000 was made, without consideration to the makers, for the benefit of a national bank, at the solicitation of its president, for use by the bank as a collateral deposit at the clearing house, and was so used. The "offering book" of the bank indicated that the note was discounted as upon the offer of the makers, but, by the direction of the president, the proceeds of discount were carried to his individual credit. He did not, however, draw out the money, and the bank was not damnified otherwise than by this entry in the president's overdrawn account. By the settled course of business, the president was permitted habitually to borrow money for the bank and to exercise entire control in its affairs. *Held*, that neither the bank nor its receiver, who is clothed only with its rights, can be esteemed a bona fide holder of the note, as against the makers.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action by B. F. Fisher, receiver of the Spring Garden National Bank, against John F. Simons, Frederick M. Simons, and Edwin S. Simons, copartners, trading as Simons Bros. & Co., on a promissory note. The circuit court directed a verdict for plaintiff, whereupon the defendants brought error; and the judgment was reversed by the circuit court of appeals, and the cause remanded, with directions to grant a new trial. 5 C. C. A. 311, 55 Fed. 905. The new trial was had April 11, 1894; BUTLER, District Judge, charging the jury as follows:

The plaintiff urges that the recent case of Bank v. Armstrong (just published in the Supreme Court Reporter for April 2, 1894) 14 Sup. Ct. 572, is in conflict with the decision of the circuit court of appeals of this circuit in this case, and sustains his position. If this were true (and I have not examined the subject with sufficient care to ascertain certainly whether it is or not), I would nevertheless be bound by the decision of the court of appeals, as it was made in this case. If the decision is to be reversed, it must be done by the court that made it. As I understand the decision last named, it rests upon three distinct grounds: First. The note having been obtained fraudulently, the plaintiff was required to produce evidence that the bank gave value for it without knowledge of the fraud, and the evidence produced was not sufficient to establish these facts. Second. Kennedy, as president of the bank, had authority, by virtue of his office, to borrow the note in the bank's name for its use, and the bank is therefore responsible for his acts and representations at the time he obtained it. Third. That, if the foregoing propositions were not correct, still the defendant might prove, as he offered to do, that the president, Kennedy, was the general manager of the affairs of the bank, and in case he did so this would be sufficient proof that the bank had invested him with special authority to borrow the paper. As the testimony

now is substantially the same as was produced on the former trial, supplemented by what has been given under the offer then rejected, we instruct you that the defendant is entitled to a verdict, if the jury believes his evidence respecting the circumstances under which the note was obtained; and, as it is uncontradicted and undisputed, you will not hesitate to believe it.

And thereupon the counsel for the said plaintiff did request the learned judge who tried the cause to charge the jury as set forth in the first point of the said plaintiff, to wit:

(1) The undisputed evidence in this case shows that F. W. Kennedy, president of the Spring Garden National Bank, had the original of the note in suit discounted by the bank, and applied the proceeds thereof to his own use; and, as there is no evidence of his authority to borrow the note for the use of the bank, the verdict should be for the plaintiff.

And thereupon the learned judge who tried the cause did answer the same as follows:

In view of the decision of the circuit court of appeals in this case, and the fact that the evidence is substantially the same now as before, the point must be disaffirmed.

And thereupon the counsel for the said plaintiff did then and there except to the answer of the said judge to the said first point of the plaintiff, and the learned judge did then and there, at the request of the counsel for said plaintiff, seal his bill of exception thereto. And thereupon the counsel for the said plaintiff did further request the court to charge as set forth in the second point of the said plaintiff, which is as follows:

(2) The undisputed evidence in this case shows that F. W. Kennedy, president of the Spring Garden National Bank, had the original of the note in suit discounted by the bank, and applied the proceeds thereof to his own use; and the evidence also shows affirmatively that said F. W. Kennedy, president, had no authority to borrow the note for the use of the bank, and therefore the verdict should be for the plaintiff.

And thereupon the learned judge who tried the cause did answer the said second point of the said plaintiff as follows:

I make the same answer to this point as I have already made to the first point, and, for further answer, refer to my general charge already made.

And thereupon the counsel for the said plaintiff did then and there except to the said answer of the said court to the second point of the plaintiff, and the learned judge who tried the cause did then and there, at the request of counsel for the said plaintiff, seal his bill of exception thereto.

Plaintiff brings error.

Silas W. Pettit, for plaintiff in error.
Robert H. Hinckley, for defendants in error.

Before SHIRAS, Circuit Justice, ACHESON, Circuit Judge, and WALES, District Judge.

ACHESON, Circuit Judge. By this suit the receiver of the Spring Garden National Bank sought to compel Simons Bros. & Co. to pay a promissory note for $5,000, dated February 13, 1891, and payable three months after date, made by them to their own order, and by them indorsed, for which they had received no consideration, and

which note they had made for the benefit of the bank, at the solicitation of its president, who gave them a receipt therefor, signed in his official capacity, setting forth that the note was for the use of the bank, and was to be paid by it.

The Spring Garden National Bank was a member of the Philadelphia Clearing-House Association. By a rule of that institution, each member thereof was required to keep on deposit at the clearing house collateral security for the payment of its daily balances upon exchanges. The note in suit was procured from the makers by Francis W. Kennedy, the president of the Spring Garden National Bank, avowedly for use by the bank as a deposit at the clearing house to secure its daily balances, and it was actually so used by the bank. By uncontradicted evidence it was shown that, by the settled course of the business of the bank, its president, Mr. Kennedy, was permitted to borrow money for the bank. Indeed, it appeared that he was in the constant habit of thus borrowing money for the use of the bank. Furthermore, it was distinctly shown that in the actual management of the bank he exercised entire control by the sufferance of the directors. The proof was complete that in all the affairs of the bank he was allowed to act in its behalf according to his own discretion. In the fall of the year 1890, at a time of general financial stringency, Mr. Kennedy borrowed for the bank, from Simons Bros. & Co., their four promissory notes, each for the sum of $5,000, for use by the bank as collateral security in the clearing house, and gave them a receipt signed by him as president, stating that the notes were for the use of, and were to be paid by, the bank. At that time he stated to Simons Bros. & Co. that the bank had plenty of "small business paper," which he would not "care to offer in the clearing house," and for their protection he promised "to set aside twenty thousand dollars of that paper." The good faith of Simons Bros. & Co. in the transaction is conceded. The note in suit was a renewal of one of the four above-mentioned notes. Two others thereof were returned to the makers before the bank was closed. One of the four, or a note given in renewal thereof, was held by the clearing house when the bank failed; and it the makers settled, paying the money to the clearing house. The "Offering Book" of the bank, under date of November 21, 1890, had an entry indicating that the original note, of which the one in suit was a renewal, was discounted as upon the offer of Simons Bros. & Co. But it appears that on the previous day, by the direction of the president, Mr. Kennedy, the proceeds of discount had been carried to his individual credit. He did not, however, draw out the money, and the bank was not damnified otherwise than by this entry of credit in the president's overdrawn account.

Upon the indisputable facts, it seems to us that neither the bank nor its receiver can be esteemed a bona fide holder of the note in suit, as against the makers. The receiver has no distinct title of his own, but is clothed with the rights only of the bank. Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148; Morris' Appeal, 88 Pa. St. 368. Now, we cannot separate the bank from its president without violating established principles, and doing rank injustice to innocent

persons. In this matter the president stood for the bank. The evidence of his general authority to represent the bank in all its affairs was so clear, and especially were the proofs of his authority to borrow funds for the bank so full, as to warrant the inference of his rightful power to act for and bind the bank in this particular transaction. Martin v. Webb, 110 U. S. 7, 14, 3 Sup. Ct. 428. There, speaking of the authority of a cashier in matters outside of his ordinary duties, the supreme court said:

"His authority may be by parol and collected from circumstances. It may be inferred from the general manner in which, for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years, or in numerous business transactions, he has been permitted, without objection, and in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the bank and those who, in good faith, deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations."

These views are applicable here, and, we think, are controlling. It will be perceived that it was part of the arrangement between the bank, through its president, and Simons Bros. & Co., that other, smaller notes were to be set aside by the bank for the protection of Simons Bros. & Co. Had this actually been done, it could not have been contended with any show of reason that the transaction was impeachable. But why should the failure of the bank to fulfill its obligation prejudice the defendants? The note was borrowed for legitimate use at the clearing house, and the arrangement, as a whole, was open to no valid objection. We are not, then, disposed to lend a ready ear to an argument based on supposed public policy and the doctrine of ultra vires. The bank has had the full benefit of the arrangement, and it cannot now be repudiated without grievous wrong to the defendants. It has been more than once authoritatively declared that a national bank cannot set up its want of legal capacity to escape a just responsibility. Bank v. Case, 99 U. S. 628; Bank v. Graham, 100 U. S. 699.

Our conclusion is entirely consistent with the ruling in the case of Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572. In their facts the two cases are essentially different. In the case referred to, the vice president, without any authority whatever, undertook to borrow an enormous sum in the name of his bank. The transaction was out of the ordinary course of business, and the bank received no advantage therefrom. The judgment of the circuit court is affirmed.