## FIRST GUARANTY STATE BANK OF CROSS PLAINS v. LIBERTY NAT. BANK OF WACO. (No. 61.)*

(Court of Civil Appeals of Texas. Waco. March 20, 1924. Rehearing Denied April 17, 1924.)

1. **Banks and banking** ⬦⟹114—**Bank ratifying transaction bound by its terms.**

Though a bank president had no authority to negotiate and guarantee payment of certain notes, if the bank ratified the transaction and accepted the benefits thereof, the bank is bound by the terms of the transaction.

2. **Banks and banking** ⬦⟹116(3)—**Knowledge of president held notice to bank of conditions under which deposit made.**

Where president of plaintiff bank acting without authority discounted notes with defendant bank and deposited the proceeds to the account of plaintiff bank on condition that plaintiff bank would maintain a balance equal to the amount of the notes and give defendant bank authority at any time to charge the notes against the account, held, that knowledge of the president of plaintiff bank, concerning the terms and conditions of the deposit was notice to plaintiff bank thereof, notwithstanding that he acted improperly, or to serve a personal interest, and plaintiff bank cannot appropriate the deposit contrary to those terms and conditions.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by the First Guaranty State Bank of Cross Plains against the Liberty National Bank of Waco. Judgment for plaintiff for an amount which defendant admitted it owed plaintiff, and plaintiff appeals. Affirmed.

Sleeper, Boynton & Kendall, of Waco, and Wagstaff, Harwell & Wagstaff, of Abilene, for appellant.

Bryan & Maxwell and Ross, Trippett & Boggess, all of Waco, for appellee.

GALLAGHER, C. J. The First Guaranty State Bank of Cross Plains, appellant herein, brought this suit against the Liberty National Bank of Waco, appellee herein, to recover the sum of $11,803.50. The parties will be designated as in the trial court. There was a trial before a jury. At the close of the evidence the court instructed the jury to return a verdict for plaintiff for the sum of $76.81, which amount defendant admitted it owed the plaintiff. The verdict was returned according to instruction and judgment rendered thereon. From said judgment this appeal is prosecuted.

The substance of plaintiff's allegations is that on or about July 1, 1922, plaintiff and defendant were corresponding banks, and that such relation continued for several months thereafter; that during such time

plaintiff sent to defendant various items to be placed to its credit and deposited with defendant large sums of money, so that on August 25, 1922, there was a balance in defendant bank to plaintiff's credit of $11,803.50, the amount sued for. The nature and origin of this credit is alleged in the plaintiff's petition as follows:

"Being the excess amount which plaintiff bank had deposited with the defendant bank over the amount which the defendant bank had deposited with the plaintiff bank, and the defendant bank had deposited with the plaintiff bank, and the defendant bank was due the plaintiff bank at said date said sum of money."

Plaintiff further charged that during the course of such transactions between said banks, defendant unlawfully charged against the account of plaintiff one certain note in the sum of $15,000, designated herein as the "Goodman and Eaves note," and one note in the sum of $5,000, designated herein as the "Lacy note," and that such charge had absorbed and extinguished the balance of the account in its favor asserted and sued on by it in this case. The authority of defendant in charging said notes to plaintiff's account was assailed in plaintiff's petition on the ground that said two notes were no part of the assets of plaintiff bank, had never been a part thereof, and payment of such notes had never been guaranteed by plaintiff.

The defendant alleged in substance that the relations between plaintiff and defendant originated in a proposition made to it by plaintiff, acting by its president, by letter, in which letter said president stated that plaintiff desired to open an account with defendant and wanted defendant to carry some of its good paper; that defendant accepted said proposition, and in pursuance thereof, plaintiff, acting by its president, tendered said notes for discount, and, to induce defendant to purchase the same, agreed to deposit the proceeds or discount price of said notes in its account in defendant bank, and agreed to maintain such deposit account to at least the amount of said notes until they were both fully paid, and further agreed that defendant at any time it desired might charge said deposit account with the amount of said notes; that defendant charged said notes to plaintiff's account under and in pursuance of said agreement; that it had accounted for and paid over to plaintiff all other deposits received from plaintiff and all credits accruing to it except a balance of $76.81 in said deposit account, which had never been demanded of it and which it offered to pay and tendered into court. By trial amendment defendant pleaded that if it should be held that plaintiff's said president in making said agreement was acting without lawful authority from plaintiff, plaintiff had ratified his acts in the premises and had accepted benefits accruing to it

therefrom and was estopped to deny such authority.

Plaintiff filed no reply to said allegations of defendant and no further pleadings of any kind.

The evidence showed that J. H. Hulme became president of the plaintiff bank some time during the latter part of June or the first part of July, 1922. B. F. Simmons at the same time became vice president and cashier, and later C. H. Smith, the bookkeeper, was made assistant cashier. The official character and respective signatures of the officers of the plaintiff bank were duly certified by plaintiff to defendant, but this was done after defendant acquired the notes over which the controversy in this case arose. On July 10, 1922, Mr. Hulme appeared at defendant bank in Waco and met C. F. Dumas, acting vice president thereof, who personally handled in behalf of defendant bank all its transactions with plaintiff bank. Mr. Hulme produced the Goodman and Eaves note and the Lacy note, referred to in the pleading, and asked Mr. Dumas to discount the same for his bank. These notes were both payable to maker's order and indorsed by the respective makers and were in the ordinary form of commercial paper such as was customarily bought by banks from each other. Both said notes were dated June 20, 1922, and due four months after date and bore interest only after maturity. Mr. Hulme, as an inducement for defendant bank to accept and discount said notes, agreed to carry in plaintiff's deposit account in defendant's bank sufficient money to at all times equal the amount of these and any other notes plaintiff might discount with defendant; and further agreed to give defendant authority to charge such notes to such account at any time it saw fit. It was mutually agreed that said notes should be discounted at the rate of 6 per cent. from that date to maturity, and that defendant would pay plaintiff interest on daily balances at the rate of 2½ per cent. Mr. Dumas then dictated, and Mr. Hulme then and there signed and delivered to him, the following writing:

"Waco, Tex., July 10, 1922.

"Liberty National Bank, Waco, Texas—Gentlemen: Inclosed you will find note for $5,000.00 dated June 20, 1922, due four months after date, signed by D. Lacy and payable to his order, also note for $15,000.00 dated June 20, 1922, due four months after date, signed by J. G. Goodman and J. J. Eaves and payable to the order of themselves, each of the above notes bearing interest from maturity at rate of 10 per cent. I wish to ask that you kindly credit the account of the First Guaranty State Bank of Cross Plains, Texas, covering the proceeds of these two notes and this will be your authority to charge our account at maturity, or any time before or after maturity that you may wish, both the said notes or either of them, mailing the note or notes to us. Yours truly,

First Guaranty State Bank of Cross Plains, Texas, by [Signed] J. H. Hulme, President."

Thereupon Mr. Dumas, acting for his bank, accepted said notes and issued in duplicate a memorandum credit slip in favor of plaintiff bank for the sum of $19,656, the aggregate amount of said two notes after deducting the stipulated discount, and gave one copy to Mr. Hulme and the other copy to the bookkeeper of defendant bank. The proceeds of said notes so deposited constituted the first item in the account of plaintiff bank with defendant bank. No other discount transaction occurred; but thereafter plaintiff made deposits in its said account with defendant in the aggregate amount of about $80,000, and from time to time withdrew some of such funds. On or about July 31, 1922, defendant forwarded to plaintiff a detailed statement of said account for the month of July. This statement showed specifically that plaintiff was credited with proceeds of discount in the sum of $19,646 and with the sum of $36.55 interest on daily balances, which were shown to include said item of discount. This statement was examined and approved by said Smith, the assistant cashier of plaintiff. The deposit account of plaintiff in defendant bank never fell below the amount of the proceeds of the discount of said two notes until August 3d. At the close of business on said day, the balance in said account was a little over $12,000. Mr. Dumas immediately addressed a letter to Mr. Simmons, the vice president of plaintiff bank, stating the situation and the original agreement, and requesting that an adequate balance be maintained to meet the terms of such agreement. It does not appear that any reply was made to this letter, but defendant bank from August 4th to August 7th, inclusive, received additional remittances for deposit in said account, amounting in the aggregate to between $22,000 and $23,000.

On August 7, 1922, Mr. Hulme called defendant bank by telephone and instructed it to remit to the Federal Reserve Bank at Dallas the balance to the credit of plaintiff in defendant bank. Defendant first charged to plaintiff's account the sum of $19,753.34, the amount of said two notes less the earned discount thereon from July 10th to August 7th, inclusive, and remitted $15,000 to the Reserve Bank as requested. Defendant then advised plaintiff by telegram of the action it had taken in the premises. Defendant also immediately mailed said two notes to the plaintiff. Plaintiff returned the notes to defendant, and defendant thereupon notified plaintiff that it held the same for collection for plaintiff's account. Later plaintiff notified defendant that the Lacy note had been paid in full and that it had received $3,000 on the Goodman and Eaves note. Defendant then mailed said Lacy note to plaintiff and

attached a slip to the other note, showing a credit of $3,000 thereon.

The testimony showed that when Mr. Hulme returned from his trip to Waco, on which trip he discounted said notes at defendant bank, he directed plaintiff's bookkeeper to charge defendant with nineteen thousand, six hundred, and some odd dollars and to credit the First National Bank of Ardmore with the same amount. These entries were reversed a little later, but subsequently restored to their original form. They were made solely on the authority of Mr. Hulme, and, so far as shown, without any data or record in the files of the bank upon which to base the same, and, so far as shown, without authority from any other officer of the bank. The testimony shows in general terms that the Ardmore Bank drew out all its money from plaintiff bank on or before the 19th of August. The records of plaintiff bank did not show that it ever owned said notes so discounted by defendant, nor any reference thereto. It was shown in evidence that the books of plaintiff bank were not correctly kept, and that there were a number of irregularities found therein; that the business of the bank was being run in an irregular and improper manner; and that Mr. Hulme and Mr. Simmons were the active men in the management of the bank, and they did what they pleased with it. The department of banking required them both to resign, and they did resign and retire from the bank on August 7 or 8, 1922. There was only one meeting of the board of directors during the time they were in charge of the bank, and that meeting was on July 11, 1922. The minutes of such meeting were not introduced. This suit was filed February 21, 1923. There are some minor matters disclosed by the evidence which are stressed by plaintiff, but which are not deemed material in view of the grounds upon which we dispose of the case.

Plaintiff requested a peremptory charge in its favor and did not ask for submission of the case to the jury for the finding of any fact or facts. It contends on this appeal that the evidence is undisputed and asks this court to reverse the judgment of the trial court and render judgment in its favor.

[1] Assuming, as contended by plaintiff, that the two notes so discounted by defendant were not the property of plaintiff, or if the property of plaintiff that its said president was not invested with lawful authority to negotiate the same and guarantee their payment, still plaintiff would be bound by the terms of said transaction as consummated by its said president if it ratified the same or accepted and enjoyed the benefits thereof. Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 574, 38 L. Ed. 470; Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611,

and authorities there cited. While there is evidence in the record tending to show such ratification, in the absence of a finding by the jury to that effect we are unwilling to predicate our disposition of this case on such evidence.

[2] The money sued for represents, in an adjustment of equities between plaintiff and defendant, the balance of the proceeds of the discounting of the Goodman and Eaves note. If this note did not belong to plaintiff when defendant discounted it, the proceeds did not belong to plaintiff. If this note was the property of plaintiff when discounted, but the action of its president in the premises was without either actual or implied authority, then the note, notwithstanding it was delivered to defendant, still belonged to plaintiff, and plaintiff was not entitled to the proceeds of the discount of the same. In either such case plaintiff's rights in or to such proceeds arose solely out of the fact that they were deposited to its credit, and such deposit stood charged with the terms and conditions under which it was so made. Such deposit was a conditional one, and unless the defendant bank has so acted as to justify plaintiff in believing such deposit was unconditional, and unless plaintiff, without notice of the actual limitations placed on such deposit, did so believe and relying on such belief acted thereon to its injury, it seems to us that the bringing of this suit and the recovery of judgment herein and the collection of such judgment would constitute a ratification of the acts of its president and the acceptance and enjoyment of the proceeds of the very transaction which it attempts to repudiate. Plaintiff tenders no such issue in its pleadings. There is nothing in such pleadings on which a claim of equitable estoppel can be based. Plaintiff did, however, prove that upon Mr. Hulme's return from his trip to Waco he ordered the First National Bank of Ardmore credited on the books of plaintiff with the approximate amount of such deposit, and in the same connection ordered defendant charged with the same amount. There was also proof that on or before August 19th said Ardmore bank had drawn out of plaintiff bank all the money it had placed therein, and that its account was then overdrawn. There was no affirmative proof that it had withdrawn any of its funds prior to August 4th, when defendant sent its letter disclosing the terms and conditions of such deposit and demanding compliance therewith. Neither is there any affirmative proof that such withdrawals included the entry to its credit so made at the instance of plaintiff's president. There is no affirmative proof that the other managing officers and directors of said bank did not in fact know from the beginning the actual facts concerning the terms on which said deposit with defendant was made. Waiving, however, the question of the adequacy of the evidence to raise an issue of equitable estoppel, plaintiff is under the undisputed facts charged with notice of the terms and conditions of such deposit at the time said credit to the Ardmore bank was first made on its books, because said credit was made upon the direction of Mr. Hulme alone. He was the sole representative of plaintiff in the transaction with defendant in which the proceeds of the discount of said notes were deposited to plaintiff's credit, and he was the sole actor and representative of plaintiff in causing the proceeds of such discount to be credited to the Ardmore bank, if such credit, as contended, represented the deposit so made in defendant's bank. Such being the case, the knowledge of Mr. Hulme concerning the terms and conditions of such deposit was notice to the plaintiff thereof, notwithstanding he may have acted improperly or may have served a personal interest in said transactions. Goldstein v. Union Nat. Bank, 109 Tex. 555, 572, 213 S. W. 584; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698.

Plaintiff, under the undisputed facts in this case, cannot receive nor appropriate such deposit contrary to the terms on which it was made, and such terms preclude a recovery. Aldrich v. Chemical Nat. Bank, supra, and cases therein cited; Panhandle Nat. Bank v. Emery, 78 Tex. 498, 15 S. W. 23, 28; Bay City Bank & Trust Co. v. Rice-Stix Dry Goods Co. (Tex. Civ. App.) 195 S. W. 344 (writ refused); Washington County State Bank v. Central Bank & Trust Co. (Tex. Civ. App.) 168 S. W. 456; First State Bank v. Hare (Tex. Civ. App.) 152 S. W. 501, 502.

No other judgment than the one rendered by the trial court in this case could have been properly rendered under the pleadings and evidence herein, and such judgment is therefore affirmed.

### On Motion for Rehearing.

Appellant has submitted, in connection with its motion for rehearing in this case, a request for additional findings of fact. We make additional findings of fact as follows:

Neither the Goodman and Eaves note nor the Lacy note, discounted with the Liberty National Bank of Waco by J. H. Hulme as president of and purporting to act for the First Guaranty State Bank of Cross Plains, bore any serial number, and neither bore revenue stamps when tendered for discount, but revenue stamps were duly affixed to the same at the time they were delivered to and accepted by said Liberty National Bank. The statement of the First Guaranty State Bank of Cross Plains in the possession of the Liberty National Bank at the time it discounted these notes showed that the Cross Plains Bank had loans amounting to $154,920, cash on hand $360,002, and deposits

$502,000. The statement sent to the Cross Plains Bank abount July 31, 1922, showing the amount of the discount of the Goodman and Eaves note and the Lacy note as of July 10, 1922, being the first item of the account, did not show whose notes were discounted at the Liberty National Bank and made no description of the notes whatever. Prior to the issuance of said statement of July 31, 1922, no statement was issued by the Liberty National Bank charging itself with the sum of the discount of such notes or showing such sum on deposit with it to the credit of the Cross Plains Bank, so far as shown, except the original memorandum of credit which it delivered to said Hulme at the time of the transaction.

Appellant's motion for rehearing is overruled.