WASHINGTON COUNTY STATE BANK v. CENTRAL BANK & TRUST CO. OF HOUSTON et al. (No. 343.)

(Court of Civil Appeals of Texas. El Paso. June 13, 1914.)

1. BILLS AND NOTES (§ 133*)—MARGINAL FIGURES—STATEMENT OF SUM IN BODY OF NOTE.

The marginal figures in the corner of a note are not a part thereof, and where a difference exists between them and the sum stated in the body of the note, the latter controls.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 330, 331; Dec. Dig. § 133.*]

2. BILLS AND NOTES (§ 326*)—TRANSFER—FRAUD—LIABILITY.

Where a holder of a note, which in its body stated that it was for $75, while the figures in the margin were $7,500, represented that the note was for $7,500, and the buyer thereof relied on the representation and paid $7,500 therefor, the ·buyer could recover the difference between $7,500 and $75.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 780–787; Dec. Dig. § 326.*]

3. BANKS AND BANKING (§ 113*)—TRANSACTIONS BY OFFICERS—LIABILITY OF BANK.

Where the president and cashier of a bank undertook to deal for it in a sale of notes indorsed in blank, and the buyer thereof understood that he dealt with the officers on behalf of the bank, and delivered a check for the price payable to the bank, it was estopped to deny that the officers acted for it, and it was liable for their fraudulent representations.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 273–276; Dec. Dig. § 113.*]

4. BANKS AND BANKING (§ 112*)—TRANSFER OF NOTES—STATUTORY PROVISIONS—APPLICABILITY.

A bank which accepts and cashes a draft given in payment of a note bought from the president and cashier of the bank, purporting to act for it, is liable for fraud of the officers inducing the sale, though they acted without authority, notwithstanding Rev. St. 1911, art. 530, which forbids a sale of a note by officers unless authorized so to do by the board of directors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 271, 272; Dec. Dig. § 112.*]

5. BANKS AND BANKING (§ 109*)—TRANSFER OF NOTES—STATUTORY PROVISIONS — APPLICABILITY.

Rev. St. 1911, art. 530, forbidding a sale or indorsement of a note by any bank officer unless authorized so to do by the board of directors, at a regular meeting, and record thereof made on the corporate minutes, refers only to a sale of notes received for money loaned.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 257–260; Dec. Dig. § 109.*]

6. BANKS AND BANKING (§ 112*)—ACTS OF OFFICERS—LIABILITY OF BANK.

Where a buyer of a note from the president and cashier of a bank, acting for it in selling the note, purporting to be owned by it, drew a check payable to the order of the bank for the price, and the check was cashed and collected through a clearing house, the bank could not disclaim responsibility for fraud of the officers inducing the sale, though one of the officers stole the proceeds of the check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 271, 272; Dec. Dig. § 112.*]

7. PRINCIPAL AND AGENT (§ 158*)—TORT OF AGENT—LIABILITY OF PRINCIPAL.

A principal is liable for the fraud of his agent within the scope of his real or apparent authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 589–598; Dec. Dig. § 158.*]

8. CORPORATIONS (§ 423*)—FRAUDULENT ACTS. OF AGENTS—LIABILITY.

A corporation is liable for the fraud of its· agents, committed within the scope of their real or apparent authority.

[Ed. Note.—For other cases, see Corporations,. Cent. Dig. §§ 1692–1695; Dec. Dig. § 423.*]

9. PLEADING (§ 245*)—AMENDMENT—ALLOWANCE.

An amended petition, which merely amplifies the allegations of the original petition by pleading more in detail the facts on which the original cause of action is based, is but a con-

---

tinuation of the original suit, and is properly allowed during the trial.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 635, 653–675; Dec. Dig. § 245.*]

10. PLEADING (§ 248*)—ANSWER—SUPPLE-MENTAL PETITION.

An amended petition, pleading in confession and avoidance of matter contained in an answer, cannot be regarded as setting up a new cause of action, though the same should be pleaded by way of supplemental petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 686, 687, 689–706, 708½, 709; Dec. Dig. § 248.*]

11. BANKS AND BANKING (§ 227*)—SALE OF NEGOTIABLE PAPER—FRAUD—LIABILITY.

In an action against a bank for fraudulent representations inducing a purchase of negotiable paper, the status of the account of the president of the bank making the sale for the bank, and the condition of the maker's account was immaterial, though the president diverted the proceeds of the draft given for the price to his own personal account.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 871–873; Dec. Dig. § 227.*]

12. ACTION (§ 27*)—NATURE OF ACTION—CONTRACT OR TORT.

An action for the fraud of the officers of a bank, inducing a purchase of negotiable instruments of the bank, is in tort, and the bank is not liable as on contract, where the buyer accepted the paper without indorsement or guaranty from the bank, though the paper was worthless.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–195; Dec. Dig. § 27.*]

Error to District Court, Harris County; Wm. Masterson, Judge.

Action by the Washington County State Bank against the Central Bank & Trust Company of Houston and others. There was a judgment for defendants, and plaintiff brings error. Reversed and remanded.

Masterson & Masterson and Andrews, Streetman, Burns & Logue, all of Houston, for plaintiff in error. Baker, Botts, Parker & Garwood, of Houston, for defendants in error.

HIGGINS, J. The Washington County State Bank sued the Central Bank & Trust Company of Houston, Tex., alleging that in October, 1909, it purchased from the latter commercial paper represented and purporting to be of the aggregate value of $17,500, for which it paid the sum of $17,500. That in the paper so purchased was a note signed by the Shelp Rubber & Supply Company, which reads:

"$7500.00.    Houston, Texas, Oct. 12, 1909.

"Six months after date for value received we promise to pay to ourselves, or order, seventy-five and no/100 dollars, etc.

        "Shelp Rubber & Supply Co.,
                "Per W. B. Shelp.

"Attest: F. W. Thaison, Secy. [Seal.]"

That by the figures upon the margin of the note and the representations of the officers of said company, it was led to believe and did believe that said note was for the sum of $7,500, and so purchased same and

paid that amount therefor; that said company had received and appropriated that amount in payment for the same. That by reason of such fraud, it was liable to plaintiff in that sum as for money had and received. A peremptory instruction was given in favor of defendant, in accordance wherewith verdict was returned and judgment so rendered. The note mentioned was indorsed in blank by the Shelp Rubber & Supply Company, and its payment guaranteed by Shelp and Thaison.

[1] The marginal figures in the corner of the note quoted are not to be regarded as a part of the instrument, but merely a memorandum of the amount. Where a difference appears between such figures and the sum mentioned in the body of a bill or note, the latter controls. The legal effect of the note as written, was for the principal sum of $75 only. 1 Dan. on Neg. Instr. (6th Ed.) § 86.

[2] Under the allegations, if established, plaintiff was entitled to recover the difference between $7,500 and $75 as for money had and received, based upon the fraudulent conduct of defendant in error in palming off a note for $75 as being for $7,500, which plaintiff thought it was buying, and upon which basis payment was made. Merryfield v. Willson, 14 Tex. 223, 65 Am. Dec. 117; Bank v. McGaughey, 38 Tex. Civ. App. 495, 86 S. W. 55; Bank v. McGaughey, 48 Tex. Civ. App. 635, 108 S. W. 475; 2 Thompson on Corp. (2d Ed.) § 1612.

The record discloses the following facts:

H. K. Harrison, as president of Washington County State Bank and in its behalf, entered into negotiations with F. E. Pye and Augustin De Zavalla, president and cashier, respectively, of the Central Bank & Trust Company, for the purchase of some commercial paper from said company; the negotiations having been initiated with De Zavalla. At the time the negotiations begun, De Zavalla was a state bank examiner, and solicited Harrison to do business with the Central Bank & Trust Company into whose employ he was presently to enter as cashier, and did enter prior to the closing of the negotiations. The negotiation was consummated by Pye sending a $10,000 obligation to the Washington County State Bank and the above-mentioned note. In payment therefor, the bank drew its draft for $17,500 on the Union Bank & Trust Company of Houston, in favor of the Central Bank & Trust Company. Although the draft was payable to Central Bank & Trust Company, the amount thereof was placed to the credit of the individual account of Pye, who appropriated same to his own personal use. The draft was collected by the Central Bank & Trust Company through the Houston Clearing House.

In support of the propriety of the peremptory instruction, the defendant in error urges there was no evidence that the Central Bank & Trust Company ever owned or had any

interest in the note sold to the Washington County State Bank and the evidence discloses its negotiation and sale to have been a personal transaction of Pye and not of the bank of which he was president. The correspondence and testimony of the parties conclusively shows that in buying the notes and remitting the purchase money, Harrison dealt with Pye and De Zavalla, as the representatives of the bank, and supposed and acted upon the assumption that he was dealing with the Central Bank & Trust Company through its president, Pye, and cashier, De, Zavalla. In this respect the evidence admits of no question, and under such circumstances the bank must assume responsibility for all their acts and conduct in connection with the transaction. They undertook to act for the bank in a matter properly pertaining to the banking business; Harrison believed and acted and dealt with them upon the assumption that they were so acting. The bank is thereby estopped to deny that Pye and De Zavalla acted for it in the sale of the notes and in collecting the proceeds and placing same to the credit of Pye. This is a well-established principle of the law of agency, and requires no citation of authority. It follows, also, that it was wholly immaterial whether the bank in fact owned or had any interest in the note in question as collateral security or otherwise. It had been indorsed in blank, and was negotiable by delivery. There was nothing to indicate to Harrison that it was not its owner but, upon the contrary, he had every reason to believe, and did believe and could rightfully assume, that it was.

[3] But it is further insisted that defendant in error cannot be held liable because article 530, R. S. 1911, forbids the sale or indorsement of a note by any of its officers unless authority so to do has been conferred by the Board of Directors at a regular meeting and record thereof made upon the corporate minutes. The record is silent as to any authority of this nature conferred upon Pye, but when it accepted and cashed the draft of plaintiff given in payment for the note, it rendered itself liable. Having accepted the benefit of a transaction procured by the fraud of its officer, it matters not that he acted without authority. Texas, etc., v. Dublin, etc. (Civ. App.) 38 S. W. 404; Bank v. Emery, 78 Tex. 498, 15 S. W. 23; Bank v. Greenville Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 829; 2 Thompson on Corp. (2d Ed.) §§ 1960, 1961.

[4] The statute mentioned refers to the sale of notes received for money loaned, and it has no application whatever.

[5-7] The Washington County State Bank issued its check for $17,500 in payment for the paper payable to order of the Central Bank & Trust Company, and it was cashed and collected by the payee through the Houston Clearing House. It will not be permitted to retain the benefit of the transaction and disclaim responsibility because its officer and agent had not been formally authorized to sell and negotiate the paper. That Pye stole the proceeds of the draft does not alter the fact that payment was made to his principal. The theft by Pye was from the Central Bank & Trust Company. The bank did not act as a mere collecting agency. The draft was payable to it and not to Pye. The Central Bank & Trust Company as the payee of the draft, was its owner, and no one else had a right to collect or could collect it. Pye was not in any wise a party thereto, and his appropriation thereof was an unlawful diversion of funds belonging to his principal. The wrongful and fraudulent act of Pye and the employés of the bank in placing the proceeds of the draft to Pye's individual account cannot affect the rights of the Washington County State Bank, whose entire action in this matter was in good faith and without a suspicion of culpability in any respect. The principal is liable for the wrongful, fraudulent, or deceitful act of his agent committed within the scope of his authority, real or apparent. Mechem on Agency (1st Ed.) § 739; Reynolds v. Witte, 13 S. C. 5, 36 Am. Rep. 678. And corporations are liable for the frauds of their agents, the same as individuals. 2 Thompson on Corp. (2d Ed.) § 1612. The Central Bank & Trust Company must assume responsibility for the acts of Pye in relation to matters which he was apparently transacting in its behalf, and which was within the scope of its business. It must bear the loss resulting from his thieving propensities rather than innocent third persons.

For the guidance of the court upon retrial, our views briefly may be stated:

First. It is wholly immaterial whether the Central Bank & Trust Company in fact owned the note.

Second. It appears beyond controversy the Washington County State Bank paid the Central Bank & Trust Company $7,500 for this note.

Third. Pye stole the same from the Central Bank & Trust Company, which fact in no wise affects the plaintiff's rights.

Fourth. The correspondence and testimony establishes that Harrison, as president of and for the Washington County State Bank, conducted the negotiation with Pye and De Zavalla, not in their personal capacities, but as officers and representatives of the Central Bank & Trust Company, and such company is responsible for such representations and acts, as its own.

Fifth. The money having been paid by the Washington County State Bank to the Central Bank & Trust Company, the latter cannot escape liability because formal authority to negotiate paper had not been conferred upon Pye by the board of directors, as required by article 530, R. S. 1911.

[8] The court erred in sustaining exceptions to the matter set up in the trial amend-

ment. It did not set up a new cause of action. An amplification of the original petition, pleading more in detail the facts upon which the original cause of action is based, is regarded as but the continuation of the original suit. Townes on Pleading (2d Ed.) 457; Thouvenin v. Lea, 26 Tex. 615; Maple v. Smith (Civ. App.) 166 S. W. 1196, recently decided by this court, and cases there cited.

[9] Furthermore, the facts alleged in the amendment were in avoidance of matter contained in the answer. It would more properly have been contained in a supplemental petition, and facts so pleaded in confession and avoidance will not be regarded as setting up a new cause of action. Fire Association v. Strayhorn, 165 S. W. 901. The fact that they were pleaded in an amendment to the original petition rather than by way of supplement does not alter the rule.

[10] The exclusion of the evidence complained of under the thirteenth, fifteenth, and sixteenth assignments presents no error, as it is all irrelevant and immaterial. The overdrawn status of Pye's account with defendant and the condition of the Shelp Rubber & Supply Company's account and its successor has no bearing upon the questions controlling a proper disposition of this case. It is an undisputed fact that Pye diverted the proceeds of the draft to his own personal account and credit, but it was a plain theft from his principal, and it must bear the loss. It cannot shift responsibility for the rascality and peculation of its president to the shoulders of innocent third persons, and inquiry into the condition of the accounts mentioned is wholly profitless.

[11, 12] The trial of this case seems to have been upon a false theory and issues not raised by the pleadings. The pleadings state an action for deceit, based upon the fraud of defendant in selling a note supposed to be for the principal sum of $7,500, but which in fact was for $75 only, and for which it was paid $7,500. It is an action ex delicto. The legal effect of the note introduced in evidence is that it is for $75, though the witnesses at times speak of it as a $7,500 note. In considering the appeal, we have confined our consideration and discussion to the issues raised by the pleadings. The note offered in evidence sustains the allegation that it was for $75 only, and it appears the plaintiff has been swindled out of the difference between such amount and $7,500. It is upon this theory that the appeal is disposed of. Since the Central Bank & Trust Company is not in any wise a party to the note, it cannot be held liable as upon contract, upon any phase of the transaction out of which this litigation arises. If it could be shown under appropriate pleadings that the note was in fact a $7,500 obligation, and was so treated by the parties thereto and the discrepancy of amount appearing in the body of the note

was so written through accident or mistake, then no liability attaches to defendant. The fact that the note was worthless does not impose liability. Plaintiff accepted it without any indorsement or guaranty from defendant, and since there is no contractual relationship, there can be no liability upon such a theory.

We do not, in any manner, desire to be understood as holding that any liability is shown, arising ex contractu.

Reversed and remanded.